**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gaynor Murrell and Jerry Murrell,<br><br>              Plaintiffs,<br><br>v.<br><br>Wyeth, Incorporated, et al.,<br><br>              Defendants. | No. CV-13-0290-PHX-DGC<br><br>**ORDER** |

Defendants have filed a motion to dismiss Plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(5) & (6). Doc. 9. The motion has been fully briefed. Docs. 13, 16. The parties have not requested oral argument. For the reasons that follow, the Court will grant the motion in part, deny it in part, and give Plaintiffs leave to amend.

**I.    Background.**

Plaintiffs filed a pro se complaint in Maricopa County Superior Court on October 10, 2012. Doc. 1-1. Defendants removed to this Court on the basis of diversity jurisdiction. Doc. 1. The complaint alleges the following facts.

Defendants are a group of related pharmaceutical companies that at all relevant times were involved in the development, manufacture, testing, marketing, distributing, and sales of hormone replacement therapy ("HRT") drugs, including Prempro, Premerin, Provera, Cycrin, and MPA. Doc. 1-1, ¶¶ 2-6, 9-21. Plaintiff Gaynor Murrell began using Prempro (a combination of estrogen and progestin) and Premarin (conjugated estrogens) after she started menopause in 1998, and continued taking Prempro until September

2007. *Id.*, ¶¶ 9, 25, 28. At that time, Mrs. Murrell was diagnosed with breast cancer that she alleges resulted from her years of HRT drug use. *Id.*

Prior to and during the time Mrs. Murrell used HRT drugs, Defendants promoted their products in magazines, brochures, advertisements, medical journals, and a video seminar, in which they made unsubstantiated claims about various health benefits – such as reduction of osteoporosis and heart disease – associated with taking their drugs, and did not fully explain the known risks. Doc. 1-1, ¶¶ 51-64.

On July 9, 2002, the *Journal of the American Medical Association* ("*JAMA*") published an expedited article on its website reporting the results of a halted Women's Health Initiative study ("WHI study") that showed, among other things, that the use of HRT drugs combining estrogen and progestin (synthetic progesterone) led to a 26 percent increase in breast cancer. *Id.*, ¶ 65. On June 25, 2003, *JAMA* published the results of a follow-up study that found that even short-term use of these combination drug therapies led to an increase in breast abnormalities, making breast tumors harder to detect. *Id.*, ¶ 76. A United Kingdom study published in the journal *Lancet* on August 9, 2003 found, similar to the WHI study, that women using combination HRT drugs were twice as likely to contract breast cancer as non-users, and the risk increased with duration of use. *Id.*, ¶ 77. As a result of these and other studies, Defendants changed their marketing strategy from promoting long-term, high dose usages of HRT drugs, continuing well after menopause, to recommending only low dose usages for short periods. *Id.*, ¶ 80.

Plaintiffs allege that Defendants knowingly concealed the risk of taking HRT drugs, and Plaintiffs were unable to discover the dangerous side effects that led to Mrs. Murrell's injury until October 10, 2010. Doc. 1-1, ¶ 83. Plaintiffs make seven claims against Defendants: (1) negligence, (2) fraud, (3) strict product liability – failure to warn, (4) strict product liability – manufacturing defect, (5) strict product liability – design defect, (6) breach of express warranty, and (7) loss of consortium on behalf of Plaintiff Jerry Murrell. *Id.*, ¶¶ 85-149.

## II. Legal Standards.

Dismissal is appropriate under Rule 12(b)(6) where the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). Dismissal is appropriate where the complaint lacks a cognizable legal theory, lacks sufficient facts alleged under a cognizable legal theory, or contains allegations disclosing some absolute defense or bar to recovery. *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

## III. Discussion.

Defendants argue that all of Plaintiffs' claims should be dismissed as untimely. Doc. 9 at 3-8. They additionally argue that Plaintiffs' failure to warn and fraud claims fail to satisfy Federal Rules of Civil Procedure 8(a) and 9(b) and fail to state a claim as a matter of law (*id.* at 9-11), and that all claims should be dismissed for inadequate service. *Id.* at 12.

### A. Plaintiffs' Response.

Upon receipt of Defendants' motion to dismiss, the Court ordered that Plaintiffs file a response in compliance with Local Rule of Civil Procedure 7.2(e) and (i) within 30 days, and that non-compliance could result in the Court summarily granting Defendants' motion. Doc. 10. Rule 7.2(i) states that a party's briefs and memoranda of law must conform "in all substantial respects with the requirements of this Local Rule." LRCiv 7.2(i). Plaintiffs' timely filed a "Response to Notice of Dismissal dated 2/20/2013." Doc. 13. Plaintiffs' response does not conform to the formatting requirements of Rule 7.1 and consists only of a brief, one page letter to the Court from Plaintiff Gaynor Murrell stating that she is pro per and does "not know the rules concerning Briefs or Memoranda of Law," and requesting that her case not be dismissed

before she has a chance to be heard in court. *Id.* at 1.

Defendants have not objected to Plaintiffs' response or requested summary dismissal, and the Court will address Defendants' motion on the merits and consider any relevant arguments Plaintiffs have put forth. Plaintiffs are advised, however, that they must become familiar with, and follow, the Federal Rules of Civil Procedure and the Rules of the United States District Court for the District of Arizona ("Local Rules"). *See King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir.1986) (pro se litigants "must follow the same rules of procedure that govern other litigants"); *Jacobsen v. Filler,* 790 F.2d 1362, 1364 (9th Cir.1986) (pro se litigants "should not be treated more favorably than parties with attorneys of record"); *Carter v. Comm'r of Internal Revenue,* 784 F.2d 1006, 1008 (9th Cir.1986) ("Although pro se, [plaintiff] is expected to abide by the rules of the court in which he litigates."). The Federal Rules of Civil Procedure are available at the following Internet website: http://www.law.cornell.edu/rules/frcp/. A copy of the Court's Local Rules of Civil Procedure may be obtained from the Clerk's Office and are available online at the Court's Internet website: www.azd.uscourts.gov (follow hyperlink titled "Rules/General Orders").

If Plaintiffs fail to prosecute this action or fail to comply with the rules or any Court order, the Court may dismiss the action with prejudice pursuant to Rule 41(b) of the Federal Rule of Civil Procedure. *See Ferdik v. Bonzelet,* 963 F.2d 1258, 1260 (9th Cir.1992); *Ghazali v. Moran,* 46 F.3d 52, 54 (9th Cir.1995).

**B.**     **Statute of Limitations.**

"[T]he statute of limitations defense . . . may be raised by a motion to dismiss . . . [i]f the running of the statute is apparent on the face of the complaint." *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir.1980) (citing *Graham v. Taubman,* 610 F.2d 821 (9th Cir.1979)). Even if the relevant dates in the complaint are beyond the statutory period, however, the "'complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Hernandez v. City of El Monte,* 138 F.3d 393, 402 (9th Cir.1998) (quoting *Supermail*

*Cargo, Inc. v. United States,* 68 F.3d 1204, 1206 (9th Cir.1995).

Under Arizona law, personal injury actions, including product liability actions, must be "commenced and prosecuted within two years after the cause of action accrues." *See* Ariz. Rev. S. § 12–542, *held unconstitutional for wrongful death actions by Anson v. Am. Motors Corp.,* 155 Ariz. 420, 426, 747 P.2d 581 (Ariz.App.1987); § 12–551, *held unconstitutional in part on other grounds by Hazine v. Montgomery Elevator Co.,* 176 Ariz. 340, 342, 861 P.2d 625 (Ariz.1993). For claims of fraud, the statute of limitations is three years from the time of "discovery by the aggrieved party of the facts constituting the fraud." Ariz. Rev. S. § 12-543(3). For breach of warranty, the statute of limitation is four years from the time the breach occurred "regardless of the aggrieved party's lack of knowledge of the breach." Ariz. Rev. S. § 47-2725(A) & (B).

Generally, "a cause of action accrues, and the statute of limitations commences, when one party is able to sue another." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.,* 182 Ariz. 586, 588, 898 P.2d 964 (Ariz. 1995). "Under the 'discovery rule,' a plaintiff's cause of action does not accrue until the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause." *Id.* In the product liability context, this means that the plaintiffs "need[] to know that the product was in some way causally connected to their injuries." *Roulston v. Foree Tire Co., Inc.*, No. 88-2691, 1990 WL 35216, at *3 (9th Cir. Mar. 29, 1990) (applying Arizona precedent). It is not enough that a person comprehend the "what" of her injury; "there must also be reason to connect the 'what' to a particular 'who' in such a way that a reasonable person would be on notice to investigate whether the injury might result from fault." *Walk v. Ring*, 44 P.3d 990, 996 (Ariz. 2002) (citing *Doe v. Roe*, 955 P.2d 951, 961 (Ariz. 1998)).

Defendants argue that all of Plaintiffs' claims are untimely because Mrs. Murrell's alleged injury was diagnosed in September 2007, and Plaintiffs did not file suit until more than five years later on October 10, 2012. Doc. 9 at 4. Defendants argue that the discovery rule does not save Plaintiffs' claims because the complaint identifies on its face many ways that the risks associated with HRT became public knowledge in 2002-2003,

including the WHI study that the *JAMA* released to the public on its website on July 9, 2002, and at least six subsequent studies connecting HRT to an increased risk of breast cancer. *Id.* at 4-5, citing Doc. 1-1, ¶¶ 7, 29-34, 66-79. Defendants also argue that Judge Neil V. Wake treated the date the *JAMA* published the WHI study as an objective accrual date for any putative HRT claims because, in an order denying the transfer of a number of such claims, he found an action timely that "was filed on July 9, 2004, exactly two years after widespread publication of the Women's Health Initiative report began." Doc. 9 at 5 (quoting *Lazell v. Wyeth, LLC*, No. CV-10-02660-PHX-NVW, Doc. 27 at 5, n. 1 (D. Ariz. Apr. 19, 2011)); *see* Doc. 9-3 at 5.

Taken in a light most favorable to Plaintiffs, the Court is not persuaded that this evidence shows that Plaintiffs knew or should with reasonable diligence have known that HRT drugs were a potential cause of Mrs. Murrell's breast cancer. Although the complaint refers to the *JAMA*'s publication of the WHI study on its website and to several subsequent studies published in professional medical journals, it does not allege that Plaintiffs knew of these studies or publications at the time. Nor is it "beyond doubt" that Plaintiffs as lay people can present no facts showing they were unaware of such information until less than two years before they filed their complaint. *Hernandez,* 138 F.3d at 402. Mrs. Murrell asserts that she did not become aware of the connection between HRT drugs and breast cancer until October 20, 2010, when she heard a doctor discuss the issue on the Today Show. Doc. 13 at 1. Additionally, courts have recognized that those confronted with the onset of an adverse medical condition have less cause to investigate possible culpability than do general product liability claimants whose injury stems from a known catastrophic event. *Compare Roulston*, 1990 WL 35216, at *3 (where the plaintiffs knew their new tire had blown and this was the cause of their injuries, they were on reasonable notice to investigate the cause of the tire failure) *with Raymond v. Eli Lily &Co.*, 415 F.Supp. 1392, 1402 (D.N.H. 1976) (finding that plaintiff who had no reason to believe her blindness was other than idiopathic could not be expected to investigate a possible connection to her oral contraceptive use until she read

of another user's blindness in the newspaper); *and Hornung v. Richardson-Merril, Inc.*, 317 F.Supp 183, 185 (D. Mont. 1970) (finding despite widespread publicity connecting the drug MER/29 with cataracts, an issue of fact existed as to whether a plaintiff had sufficient knowledge to infer that MER/29 was the specific cause of his cataracts).

Judge Wake's finding that a personal injury claim filed exactly two years after the *JAMA* published the WHI study was timely is also not grounds for finding any claims filed more than two years after that date untimely. Where, as here, the complaint contains no facts showing that Plaintiffs were personally aware of or had been apprised of any medical studies linking HRT to breast cancer prior to 2010, and Plaintiffs' apparent failure to investigate HRT as a possible cause is not clearly unreasonable, the Court cannot find that Plaintiffs claims are barred as untimely on the face of the complaint.

Defendants make additional arguments based on evidence outside the complaint that Plaintiffs did not show reasonable diligence in failing to discover their causes of action earlier. First, they argue that beginning in January 2003 the Prempro label contained a black box warning about the risk of breast cancer, and that Plaintiffs could not reasonably have overlooked the warning. Doc. 9 at 4-5. Defendants rely for this assertion on what appears to be a multi-page information packet about Prempro (*see* Doc. 9-4) that they argue the Court can consider on a motion to dismiss because it is a "matter of public record." *Id.* at 6, 6, n. 4 (citing *Mills v. Bristol-Myers Squibb Co.*, No. CV 11-00968-PHX-FJM, 2011 WL 4708850, at *2, n. 2 (D. Ariz. Oct. 7, 2011) ("We may consider the Plavix label . . . because it is a matter of public record."); *In re Amgen Inc. Sec. Litig.*, 544 F.Supp.2d 1009, 1023 (C.D. Cal. 2008) (taking judicial notice of drug labels taken from the FDA website because they were "capable of accurate and ready determination" and "not subject to reasonable dispute" for purposes of Federal Rule of Evidence 201(b)). Defendants fail to give sufficient information about what they refer to as the Prempro "label" for the Court to determine if the attached multi-page document is a matter of public record. And even if the Court were to take judicial notice of this information, factual issues would remain as to whether Mrs. Murrell was provided

with this information and whether the warnings contained therein would reasonably have placed Plaintiffs on notice that Mrs. Murrell's use of Prempro could have been the cause of her breast cancer. The Court finds these questions more appropriate for resolution at summary judgment.

Defendants next argue that Plaintiffs did not show reasonable diligence to discover their causes of action because it was "readily discoverable" that the *JAMA*'s release of the WHI study prompted a flood of litigation, leading to the establishment of a multidistrict litigation ("MDL") action in the District of Arkansas in 2003, resulting in the consolidation of over 4,000 cases by the end of 2008. *Id.* at 5-6; *see* Docs. 9-5, 9-6, 9-7. Although the Court may consider court documents submitted in the MDL action as "matters of public record" without converting this to a motion for summary judgment (*see* Fed. Rule of Civ. P. 12(b)(d); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)), the Court is not persuaded that the existence of the MDL action is sufficient to show that pro se Plaintiffs knew or should have known about these cases prior to 2010.

In summary, the Court does not find sufficient evidence at this stage of the litigation to find that Plaintiffs either knew or should have known their causes of action earlier than the date of discovery alleged in their complaint and response. The Court will deny Defendants' motion to dismiss Plaintiffs' personal injury and fraud claims on statute of limitations grounds because the limitations periods for those claims are two and three years, and, applying the discovery rule, Plaintiffs have plausibly alleged that they did not discover the cause of Mrs. Murrell's injury until October 20, 2010, less than two years before they filed their complaint.

The discovery rule does not apply, however, to Plaintiffs' breach of warranty claim because, under Arizona law, this claim has a statute of limitations of four years "regardless of the aggrieved party's lack of knowledge of the breach." Ariz. Rev. S. § 47-2725(A) & (B). Plaintiffs allege that Defendants breached their express warranty that their products were safe, causing Mrs. Murrell to suffer injury from taking their products. Doc. 1-1, ¶¶ 139-145. Dating the accrual of this claim from the date of the alleged

breach, the facts on the face of the complaint show that Plaintiffs did not file their claim within four years after Mrs. Murrell's injury ensued and she was diagnosed with cancer in September of 2007. The Court will dismiss this claim with prejudice.[1]

### C. Failure to State a Claim.

#### 1. Claim Three: Strict Liability – Failure to Warn.

Defendants argue that Plaintiffs' failure to warn claim is deficient as a matter of law because Plaintiffs have failed to allege any facts showing that Mrs. Murrell would not have been injured from taking Defendants' products had a proper warning been given. Doc. 9 at 9. To establish proximate cause on a failure to warn claim under Arizona law, a plaintiff "needs to show that had a proper warning been given, the injury would not have happened." *Mills*, 2011 WL 4708850, at *3, (citing *Gosewisch v. Am. Honda Motor Co., Inc.,* 737 P.2d 376, 379 (Ariz. 1987) (superseded by statute on other grounds); *Gebhardt v.Mentor Corp.,* 191 F.R.D. 180, 184–85 (D. Ariz. 1999) (granting summary judgment to defendant on a failure to warn claim when plaintiff failed to show that a doctor would not have used a medical device on plaintiff if alternative warnings had been given).

Defendants are correct that Plaintiffs have made no allegations that either Mrs. Murrell's doctor would not have prescribed, or that she would not have taken, Defendants' HRT drugs had a proper warning been given. In fact, Plaintiffs allege no facts regarding what doctor prescribed the medications, what information Mrs. Murrell or her doctor relied on at the time, or whether they may have considered alternative remedies. Absent any allegation that Mrs. Murrell or her doctor would have acted differently had a proper warning been given, simply alleging that a failure to warn was

---

[1] Plaintiffs allege that the statutes of limitations on all their claims were equitably tolled due to Defendants' concealment of the dangerous character of taking HRT drugs. Doc. 1-1, ¶¶ 83-84. For equitable tolling to apply, however, Defendants must have engaged in "some positive act of concealment . . . to prevent detection." *Jackson v. Am. Credit Bureau, Inc.*, 531 P.2d 932, 935 (Ariz. Ct. App. 1975). Plaintiffs have not alleged any affirmative acts of concealment by Defendants, and their allegations of numerous published studies regarding the dangers of taking HRT drugs which Defendants did not allegedly hinder or refute precludes equitable tolling on concealment grounds.

- 9 -

one of the causes of injury is insufficient as a matter of law. *Welch v. Wright Med. Tech., Inc.*, No. CV-11-2113-PHX-DGC, 2012 WL 4711899, at *2 (Oct. 3, 2012). The Court will dismiss this claim.[2]

### 2. Claim Two: Fraud.

Defendants argue that Plaintiffs' complaint offers only generalities and does not satisfy the level of specificity required for a fraud claim. Doc. 9 at 10-11. Under Rule 9(b), a plaintiff "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged"); *Lancaster Cmty. Hosp. v. Antelope Valley Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) (Rule 9(b) "requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme.").

Defendants argue, and the Court agrees, that although Plaintiffs identify with particularity a number of allegedly false or misleading statements Defendants made in specific advertisements and marketing materials (*see* Doc. 1-1, ¶¶ 55-56; 58-59; 62), Plaintiffs fail to identify a single statement or representation that Mrs. Murrell or her prescribing doctors saw, much less relied on. Doc. 9 at 11. Plaintiffs generally allege that Defendants marketed their drugs to consumers, "including Plaintiff and her doctors" (Doc. 1-1, ¶ 88), and that "Plaintiff justifiably relied to her detriment upon the Defendants' intentional misrepresentations," (*id.*, ¶ 100), but it is not clear from the

---

[2] Defendants summarily argue on the basis of *Mills v. Bristol-Myers Squibb Co.*, that the Court should dismiss Plaintiffs' negligence claim along with their failure to warn claim. Doc. 9 at 10 (quoting *Mills*, 2011 WL 4708850, at *4) ("Because plaintiff has not pled a plausible strict liability claim, her negligence claim is insufficient."). Defendants' reliance on *Mills* for a per se rule is misplaced. Plaintiffs' negligence claim is based on allegations that Defendants breached their duty of care in the manufacture, testing, and sale of their products, and does not rest exclusively on a failure to warn as the proximate cause of injury. *See* Doc. 1-1, ¶¶ 86-89. Absent additional arguments as to why Plaintiffs' negligence claim fails, the Court will not dismiss this claim.

1 complaint which, if any, of the alleged misrepresentations Mrs. Murrell or her doctors saw and relied on, or when and where they did so. Such general allegations are insufficient to state a claim under Rule 9(b). *See, e.g., Mills*, 2011 WL 4708850, at *4 (finding negligent misrepresentation claim inadequate under Rule (b) where "Plaintiff fails to identify any specific representations that were made, to which of her healthcare providers these were made, and when they were made."). The Court will dismiss Plaintiffs' fraud claim.

### D. Improper Service.

"A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Fed. R. Civ. P. 4." *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986). Under Rule 4(h), service of process on a corporate entity must be effected by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and – if the agent is one authorized by statute and the statute so requires – by also mailing a copy of each to the defendant," or by following state law for serving a summons. Fed. R. Civ. P. 4(h). Generally, when service of process is contested, the burden is on the plaintiff to show that proper service was made. *See Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993); *Rivera-Lopez v. Municipality of Dorado*, 979 F.2d 885, 887 (1st Cir. 1992); *Cranford v. United States*, 359 F. Supp. 2d 981, 984 (E.D. Cal. 2005).

Defendants argue that Plaintiffs' attempt to serve Pharmacia & Upjohn Co. was insufficient because Plaintiffs served a summons directed to a different entity. Doc. 9 at 12. Defendants' notice of removal states that the copy of the complaint and summons served on Pharmacia & Upjohn Co. was actually addressed to Wyeth, LLC. Doc. 1, ¶ 5. Defendants argue that service to Wyeth, LLC was insufficient because the summons and complaint were erroneously served on non-defendant Wyeth Holdings Corp. Doc. 9 at 12; *see* Doc. 1,¶ 3. Finally, Defendants argue that service to Pfizer Inc. was insufficient because Plaintiffs never filed an affidavit of service. Doc. 12 at 9.

- 11 -

1  Rule 4(m) provides that "the court shall extend the time for service" upon a
2 showing of "good cause." Plaintiffs have not responded to Defendants' arguments or
3 attempted to show good cause. The Ninth Circuit has held, however, that district courts
4 have broad discretion under Rule 4(m) to extend time for proper service even without a
5 showing of good cause. *See United States v. 2,164 Watches,* 366 F.3d 767, 772 (9th Cir.
6 2004). This holding is consistent with the Advisory Committee Note to Rule 4(m), which
7 "authorizes the court to relieve a plaintiff of the consequences of an application of
8 [Rule 4(m)] even if there is no good cause shown." (1993 Amendments); *see also Efaw v.
9 Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007) (noting that "[d]istrict courts have broad
10 discretion to extend time for service under Rule 4(m)" and that "[i]n making extension
11 decisions under Rule 4(m) a district court may consider factors like a statute of
12 limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual
13 service.") (internal quotation marks and citations omitted). Defendants have not claimed
14 that any entity failed to receive actual notice of the lawsuit or that they will be prejudiced
15 if the Court extends the time for proper service. Additionally, the Court finds that the
16 improperly addressed summons to Pharmacia & Upjohn Co. and the mistaken service to
17 Wyeth Holding Co. rather than Wyeth, LLC on the part of a *pro se* plaintiff constitutes
18 excusable neglect. *See Boudette v. Barnette*, 923 F.2d 754, 755-56 (9th Cir. 1991). The
19 Court will therefore give Plaintiffs an additional 60 days to complete service or obtain
20 waivers of service from these Defendants as required under Rule 4. The Court does not
21 find that service on Pfizer was insufficient because Defendants have stated that Pfizer
22 was properly served by certified mail and a process server. Doc. 1, ¶ 4. Defendants'
23 argument that Pfizer did not receive proper service is based solely on Plaintiffs' alleged
24 failure to file an affidavit of service, but Defendants acknowledge receiving service prior
25 to removal from state court (Doc. 1, ¶ 4), and Defendants have not shown, nor does the
26 Court find, that an affidavit of service is required under Arizona state law. As to the
27 remaining Defendants, Plaintiffs must follow the requirements for proof of service as set
28 forth in Rule 4(l).

**IT IS ORDERED:**

1. Defendant's motion to dismiss (Doc. 9) is **granted in part** and **denied in part** as set forth in this order.

2. Plaintiffs' breach of express warranty claim (count six) is **dismissed with prejudice**, and Plaintiffs' fraud and strict liability–failure to warn claims (counts two and three) are **dismissed with leave to amend**. Plaintiffs shall have 20 days to file an amended complaint.

3. Plaintiffs must complete proper service on Defendants Pharmacia & Upjohn Co. and Wyeth, LLC within **60 days** of the date of this order. If Plaintiffs fail to provide proof of service or obtain waivers of service within **60 days**, their claims against these Defendants will be dismissed.

Dated this 3rd day of May, 2013.

_____
David G. Campbell
United States District Judge